IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORFOLK SOUTHERN RAILWAY )
CO., )
 )
         **Plaintiff,** )
 )
    v. )    1:08CV99
 )
TIMEC COMPANY, INC., )
 )
         **Defendant.** )

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on cross motions for summary judgment. (Docket Nos. 27, 29.) The parties have fully briefed the issues. (Docket Nos. 28, 30, 31-34.) The Court held oral argument on these motions on October 22, 2009, and both motions are now ready for ruling. For the reasons stated herein, the Court concludes that each motion should be granted in part and denied in part and that Plaintiff should recover from Defendant the sum of $37,468.03.

**FACTUAL AND PROCEDURAL BACKGROUND**

This action involves a contract dispute based upon an indemnity agreement executed between Plaintiff Norfolk Southern Railway Co. ("Norfolk Southern") as indemnitee and Defendant TIMEC Company ("TIMEC") as indemnitor. Plaintiff's Complaint alleges one Claim for Relief for breach of contract. (Docket No. 1, Complaint ("Compl.") at 4-5.)

Plaintiff alleges that Defendant breached the indemnity agreement by refusing to pay certain costs and expenses which arose in a separate action. (*Id*. at 4.) Plaintiff claims that it suffered damages due to this alleged breach in the amount of $94,807.23. (*Id*.) This amount includes the settlement amount paid to Roger L. Holt, an employee of Defendant's subcontractor of $35,000 in addition to $2,468.03 in litigation costs and attorney's fees in the amount of $57,339.20. (*Id*. at 3-4.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). (*Id*. at 1-2.)

Mr. Holt initiated an action in North Carolina state court (Guilford County Superior Court, No. 06 CVS 4949) on March 21, 2006, alleging that he was injured due to the negligence of Plaintiff and Defendant. (*Id*. at 3.) On June 8, 2007, Plaintiff Norfolk Southern settled at mediation with Mr. Holt, obtaining a release in exchange for the lump sum payment of $35,000 paid on August 21, 2007.[1] (*Id*.)

The incident giving rise to Mr. Holt's injury occurred on March 26, 2003, at an R.J. Reynolds industrial facility in Winston-Salem, N.C. (*Id*. at 2.) As part of the work at that facility, Defendant was in the process of dismantling a boiler which would be transported by rail to one of Defendant's customers in Montana. (*Id*.) Defendant loaded boiler parts onto railcars owned and spotted at the site by Plaintiff. (*Id*.) Plaintiff and Defendant had entered into an indemnification agreement on March 12, 2003 to facilitate this activity. (*Id*., Ex. A.)

---

[1] Defendant settled its claims with Mr. Holt prior to mediation for a lump sum of $17,500. (Docket No. 30, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 3 n.1.)

In this indemnification agreement, Defendant agreed to "indemnify and save harmless [Plaintiff] . . . from and against any and all claims, demands, losses, suits, judgments, expense and liability resulting from injury to or death of any person or persons . . . and damage to or loss of any property . . . arising or in any manner growing out of the presence of [Defendant] . . . on or about [Plaintiff's] property regardless of any negligence of [Plaintiff]."[2] (Compl. at 2-3 & Ex. A; Docket No. 30 at 3-4.) On March 26, 2003, Mr. Holt was injured when he lost control of a railcar owned by Plaintiff and located at the R.J. Reynolds facility. (Compl. 1 at 3.) When Mr. Holt released the brake on the railcar, it began traveling downhill and crashed into an R.J. Reynolds building. (*Id*.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. *Id.*

---

[2] The copies of this agreement in the record are barely legible. However, there is no disagreement as to any material terms of the agreement.

at 255. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

**B.     Whether the Indemnification Provision is Void as Against Public Policy**

Under North Carolina law, the elements of a claim for breach of contract are the existence of a valid contract and breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838, 843 (2000). TIMEC's only argument against the validity of the indemnity agreement being sued upon is that the indemnity provision is void because it is against public policy. If the agreement is found by the Court to be valid, there is also an issue regarding the extent of recoverable damages under the agreement.

The first issue raised by the parties is whether the indemnification provision contained within the parties' agreement is void as against North Carolina public policy expressed in N.C. Gen. Stat. § 22B-1. (Docket No. 28, Pl.'s Br. in Supp. of Mot. for Summ. J. at 6; Docket No. 30 at 5-7.) Section 22B-1 generally invalidates provisions of construction

-4-

indemnity agreements[3] which purport to indemnify or hold harmless the promisee against liability for personal injury or damage to property proximately caused by or resulting from the negligence, in whole or in part, of the promisee. N.C. Gen. Stat. § 22B-1 (1996). That section declares that such a provision is "against public policy and is void and unenforceable." (*Id*.) However, section 22B-1 also provides that the section "shall not affect an insurance contract, workers' compensation, or any other agreement issued by an insurer, nor shall this section apply to promises or agreements under which a public utility as defined in G.S. 62-3(23) including a railroad corporation as an indemnitee." *Id*. Section 62-3(23) defines "public utility" as a person owning or operating in the state equipment or facilities for such activities as producing electricity and distributing water. N.C. Gen. Stat. § 62-3(23)(a) (Supp. 1998).

The parties disagree on the effect of this exception for railroad corporations. Plaintiff Norfolk Southern argues that the exception applies and that the statute therefore does not void any portion of the parties' agreement. (Docket No. 28 at 6.) Defendant TIMEC contends that the exception for railroad corporations should not apply because "both parties are acting as two private corporate entities performing a contract for profit" and no public service was involved. (Docket No. 30 at 6-7.)

---

[3] Defendant contends and Plaintiff does not dispute that the removal of the boiler falls within the statute's description of such a construction agreement. (Docket No. 30 at 5; Docket No. 31, Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. at 4-5.)

-5-

To the Court's mind, the most troubling aspect of Defendant's contention is that the plain language of the statute does not condition the exception for a "railroad corporation" on the requirement that the railroad's particular construction contract concern a public rather than private service. It is true that the statute also excludes public utilities as defined in section 62-3(23). However, Defendant points to no statutory language which conditions the application of the exception for public utilities on the requirement that the public utility's construction contract concern a public rather than private service. With no language in the statute creating such a requirement for either public utilities or railroad corporations, Defendant falls back upon an argument that case law decided before the enactment of section 22B-1 suggests that public utilities may be treated as private entities when the contract at issue does not involve a public service. (Docket No. 30 at 7.)

In *Beachboard v. Southern Ry. Co.*, 16 N.C. App. 671, 193 S.E.2d 577 (1972), the railroad filed a third-party complaint against the owner of a railroad yard (where an employee of the railroad was injured) for indemnification. The railroad yard owner had contracted to indemnify the railroad "against any and all damage resulting from the negligence of" the owner. *Id.* at 579. Both the railroad and the railroad yard owner were found to have been negligent. *Id.* at 580. One argument of the railroad yard owner on appeal was that the indemnity agreement was void against public policy because at the time in 1972 the "well established principle" was that a public service corporation or public utility could not contract to escape liability from its own negligence occurring in the regular course of its

business or in performing one of its duties of public service. *Id*. at 583. The court recognized this principle but found that the exculpatory clause of the contract at issue was enforceable notwithstanding public policy because the contract was "causal and private and in no way connected with its public service." *Id*. The railroad received the benefit of its indemnity contract.

It would be incongruous indeed to find that Plaintiff Norfolk Southern is not entitled to receive the benefit of its indemnity agreement against Defendant under the reasoning of *Beachboard* which enforced such an indemnity agreement. It would be even more unreasonable to do so now that section 22B-1 is in effect, voiding some indemnity agreements but by its terms not voiding provisions of agreements in which a railroad has contracted to be indemnified for its own negligence. *Beachboard* does not advance Defendant's argument that the indemnity agreement between the parties should be found to be void.

Defendant TIMEC also argues that if the drafters of section 22B-1 had intended to allow railroad corporations to be wholly exempt from the statute's reach, they would have "placed an 'and' instead of the [sic] 'including' in the statute." (Docket No. 32, Def.'s Resp. to Pl.'s Mot. for Summ. J. at 4.) The word "including" suggests to TIMEC that the drafters "emphasized the addition of railroad corporations in the definition of 'public utility.'" (*Id*.) This language, Defendant further argues, suggests that railroads should be wholly exempt from the statute only if they are contracting publicly. (*Id*.)

Even if the Court assumes that the drafters of section 22B-1 intended, by the use of the word "including," to exempt railroad corporations only to the extent that they qualified as a "public utility" under section 62-3(23), it does not follow that use of the public or private contracting test proposed by Defendant TIMEC is proper. Rather, North Carolina cases show that whether an enterprise is a "public utility" under section 62-3(23) is determined under a different standard. In *State ex rel. Utilities Comm'n v. Southern Bell Tel. & Tel. Co.*, 93 N.C. App. 260, 377 S.E.2d 772 (1989), the court of appeals found that the "publishing of Yellow Pages advertisements" was not part of the telephone company's public utility business. *See* 377 S.E.2d at 775-76. However, the North Carolina Supreme Court reversed because the court of appeals' "interpretation of the public utility function [was] far too narrow." *State ex rel. Utilities Comm'n v. Southern Bell Tel. & Tel. Co.*, 326 N.C. 522, 527, 391 S.E.2d 487, 490 (1990). The court found that Southern Bell's "public utility function" included all functions "required to provide adequate service to the subscribers." *Id*. In turn, a part of this function of providing adequate service was ensuring that its listings in its yellow pages advertisements were proper. *Id*. at 491.

Plaintiff Norfolk Southern is a "common carrier by rail" and in this case supplied railcars to Defendant TIMEC so that it could load parts of a boiler onto the cars for transport by rail to another state. (Compl. at 1-2.) Similar to the phone company's "public utility function" in *Southern Bell*, Norfolk Southern's public utility function is to provide adequate service to its customers in transporting goods by rail. In order to ensure safe and reliable

transportation of goods by rail, Norfolk Southern must ensure that the goods are properly loaded onto the railcars. Mr. Holt was injured while engaged in the general activity of loading the railcars. (Compl. ¶ 7; Docket No. 8, Answer ¶ 7.) Therefore, the Court finds that this activity falls within Norfolk Southern's public utility function. *See Southern Bell*, 391 S.E.2d at 491.

Accordingly, even if railroad corporations are exempt from section 22B-1 only to the extent that they are engaged in a public utility function, Plaintiff Norfolk Southern is exempt in this case. The primary goal of statutory construction is to give effect to the intent of the legislature. *Kaplan v. Prolife Action League*, 123 N.C. App. 720, 475 S.E.2d 247, 250 (1996). Here, it is clear that the intent of the legislature was to exempt from the application of section 22B-1 the type of construction indemnity agreement entered into between Plaintiff and Defendant. Therefore, the parties' indemnity agreement is not void as against public policy, and Norfolk Southern is entitled to enforce it against TIMEC.

Plaintiff's Motion for Summary Judgment should be granted on the question of the validity of the contract, and Defendant's motion should be denied on this issue.

**C.     Whether Attorney's Fees are Recoverable under the Contract**

As part of its damages, Norfolk Southern seeks to recover $57,339.03 in attorney's fees it paid in the *Holt* litigation. TIMEC argues first that in North Carolina a party must have a statutory right to recover attorney's fees in a lawsuit and that Plaintiff has no such right. Defendant relies upon two cases which involve the right to recover attorney's fees

pursuant to lease agreements which contain a provision allowing the recovery of attorney's fees in the successful enforcement of the underlying contract. *See Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 266 S.E.2d 812 (1980); *WRI/Raleigh, L.P. v. Shaikh*, 183 N.C. App. 249, 644 S.E.2d 245 (2007); Docket No. 30 at 7-8. Nonetheless, these cases do not speak to the enforcement of a provision said to allow the recovery of attorney's fees in an indemnity agreement.[4] Because Defendant does not provide any authority for the proposition that enforcement of such a provision in an indemnity agreement would require a separate statutory basis, this argument is not persuasive.

Defendant next contends that Plaintiff's recovery of attorney's fees should not be allowed because such recovery of fees is not expressly listed in the indemnification agreement. (Docket No. 30 at 8-9). In construing a contract of indemnity, the Court's primary purpose is to construe the contract to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties. *Dixie Container Corp. v. Dale*, 273 N.C. 624, 160 S.E.2d 708, 711 (1968). The contract "cannot be extended to cover any losses 'which are neither expressly within its terms nor of such character that

---

[4] Defendant relied upon additional cases at oral argument which pertain to the recovery of attorney's fees pursuant to consent order, *Carswell v. Hendersonville Country Club, Inc.,* 169 N.C. App. 227, 609 S.E.2d 460 (2005), pursuant to consent judgment, *Harborgate Prop. Owners Ass'n, Inc. v. Mountain Lake Shores Dev. Corp.*, 145 N.C. App. 290, 551 S.E.2d 207 (2001), and pursuant to an asset purchase agreement, *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.,* 143 N.C. App. 1, 545 S.E.2d 745 (2001).

it can reasonably be inferred that they were intended to be within the contract.'" *Id*. (quoting 42 C.J.S. *Indemnity* § 8 (1944).)

The indemnity agreement between Norfolk Southern and TIMEC covers "all claims, demands, losses, suits, judgments, expense and liability resulting from injury to or death of any person." (Compl., Ex. A.) The agreement does not expressly list attorney's fees as a recoverable item. Therefore, attorney's fees are recoverable only if it can reasonably be inferred that the parties intended that they be within the contract. *Dixie Container*, 160 S.E.2d at 711.

Defendant TIMEC contends that as a knowledgeable and sophisticated corporation, Plaintiff Norfolk Southern should anticipate potential litigation over the wording of any contract and could have simply added "attorney's fees" to the list of seven identified recoverable items if intended that they be recoverable. (Docket No. 30 at 9.) That the parties did not include "attorney's fees" is evidence that they did not intend to allow their recovery, according to Defendant.

Plaintiff first argues that the plain and ordinary meaning of "expense" and "liability," terms which do appear in the contract, demonstrate an intent that attorney's fees be recoverable. (Docket No. 31 at 8.) Plaintiff observes that "expense" is defined by *Black's Law Dictionary* 658 (9th ed. 2009), as "an expenditure of money, time, labor, or resources to accomplish a result." (*Id*.) Also, "liability" is defined as "a financial or pecuniary obligation," according to Plaintiff. (*Id*.)

-11-

Plaintiff does not cite any North Carolina case in which attorney's fees were found to be recoverable under an indemnity agreement covering only "expense" or "liability," and the Court has not found such a case. Indeed, the North Carolina cases considering similar wording tend to show that such language is not sufficiently broad to cover attorney's fees. In *Cooper v. H.B. Owsley & Son, Inc.*, 43 N.C. App. 261, 258 S.E.2d 842, 843 (1979), the court found that an indemnity agreement listing "damages or losses of any kind whatsoever" was not sufficiently broad to cover attorney's fees. In *Queen City Coach Co. v. Lumberton Coach Co.*, 229 N.C. 534, 50 S.E.2d 288, 289-90 (1948), the court found that an indemnity agreement listing "any and all damages or loss" was not sufficiently comprehensive to include reimbursement for attorney's fees. The *Queen City* court specifically rejected "numerous decisions in other jurisdictions . . . in which attorneys' fees are held recoverable . . . *as items of costs*, and are also regarded as losses for which reimbursement is allowed." *Id*. at 289 (emphasis added).

In addition, in *Parker v. Lippard*, 87 N.C. App. 43, 359 S.E.2d 492, 494, *modified on rehearing*, 87 N.C. App. 487, 361 S.E.2d 395 (1987), the court of appeals denied the recovery of attorney's fees as a "cost" or "expense" of resale following a bidder's default. The defendant appealed from an order assessing him with legal fees incurred by the executor of an estate after defendant's default on his winning bid at the judicial sale of the estate. The lower court's order included all attorney's fees incurred by the executor in both litigating defendant's default and in conducting the resales of the property. The appellate court noted

that there was case authority for awarding "the expense of the sale" and that statutory authority authorized taxing the "costs of resale." 359 S.E.2d at 494. The court found, however, that attorney's fees were neither a cost nor an *expense* of resale, and required an express authorization for attorney's fees. *Id*.

Based upon these North Carolina cases, the Court finds that the indemnity agreement between Plaintiff and Defendant does not include indemnification for attorney's fees. The parties listed "expense and liability" which, as Plaintiff argues, come the closest to potentially including attorney's fees. The use of such additional terms could be construed to suggest that the parties intended somewhat broader coverage than the courts found under the language at issue in *Cooper* and *Queen City Coach Co.*, but still not sufficiently broad to cover attorney's fees. In particular, the inclusion of "expense" in the agreement leads the Court to conclude that the parties intended to include costs such as those in the underlying action amounting to $2,468.03.[5] This amount includes mediation fees, transcripts fees, and fees for copying, filing, couriers, phone charges and postage. (Docket No. 28 at 4 n.1.) Such items of expense are not likely to result in a substantial amount of money being owed by the indemnifying party. Attorney's fees, on the other hand, may result in a substantial amount, even exceeding liability, and therefore are not of "such character" as to be inferred to be

---

[5] Defendant does not argue against the recovery of these costs if the agreement is found to be valid.

-13-

Case 1:08-cv-00099-TDS-PTS    Document 39    Filed 11/09/09    Page 13 of 15

intended by the parties. *Dixie Container*, 160 S.E.2d at 711. Therefore, as in *Parker*, the Court finds that attorney's fees are not covered by the term "expense."

In addition, the inclusion of "liability" and the absence of "damages" in the indemnity agreement leads the Court to conclude that the parties intended "liability" to cover items similar to damages, rather than for "liability" to extend to attorney's fees. As seen from *Cooper* and *Queen City Coach Co.*, the listing of "damages" as a recoverable item does not include attorney's fees.

Plaintiff also relies on a Virginia Supreme Court case which found that attorney's fees were recoverable in an indemnity contract as part of the damages. *Southern Ry. Co. v. Arlen Realty and Dev. Corp.*, 220 Va. 291, 257 S.E.2d 841 (1979). That court relied on the section on Indemnity in *Corpus Juris Secundum*, which Plaintiff also relies upon. (Docket No. 31 at 9.) However, the express rejection of such foreign authority on this question in *Queen City Coach Co.* shows that the law differs in North Carolina. North Carolina resists a broad interpretation of such contract provisions and favors a strict interpretation of provisions which might authorize the recovery of attorney's fees. Therefore, Plaintiff's reliance upon such authority is misplaced in this case governed by North Carolina law.

Because the Court has concluded that attorney's fees are not recoverable under the indemnity agreement, there is no need to address the parties' remaining arguments regarding the proper amount of these fees.

In summary, the Court finds that the parties' contract must be construed such that attorney's fees are not recoverable by Plaintiff. The parties have not suggested that parol evidence exists which might be relevant to this determination. Plaintiff's Motion for Summary Judgment as to the recovery of attorney's fees should therefore be denied. Defendant's Motion for Summary Judgment should be granted only to deny the recovery of attorney's fees. Norfolk Southern is entitled to recover as indemnification from TIMEC the amounts of $35,000 for the settlement of claims and $2,468.03 in expenses.

**Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 27) be granted in part and denied in part and that Defendant's Motion for Summary Judgment (Docket No. 29) be granted in part and denied in part, as set out above. Judgment should be entered in favor of Norfolk Southern in the amount of $37,468.03.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: November 9, 2009